No. 86-429

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

JOSEPH M. BELTH, as an individual
and as Editor of the Insurance Forum,

        Plaintiff/Petitioner and Respondent,

-vs-

ANDREA BENNETT, State Auditor and
Commissioner of Insurance of the
State of Montana,

        Defendant/Respondent and Appellant.

---

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Robert Throssell argued, State Auditor's Office, Helena, Montana

    For Respondent:

        Jonathan Motl argued, Helena, Montana


    For Amicus Curiae:

        Paul Van Tricht, Legal Affairs, Dept. of Revenue,
Helena, Montana
Charles E. Erdmann, National Association of Insurance
Commissioners, Helena, Montana and Sandra L. Gilfillan,
Kansas City, Missouri

---

        Submitted:   February 19, 1987

        Decided:   July 2, 1987

Filed: JUL 2 - 1987

*Ethel M. Harrison*
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Andrea Bennett, the State Auditor and Commissioner of Insurance for the State of Montana, appeals a Lewis and Clark County District Court order directing her to provide respondent Joseph Belth with access to data and analyses in appellant's possession which relate to insurance companies. The issues on appeal are:

(1) whether a corporation, as well as a natural person, can assert the right to privacy exception in Section 9, Article II of the Montana Constitution (the "Right to Know");

(2) whether a governmental agency can assert another's Section 9, Article II privacy interest;

(3) whether public disclosure of the information would deny due process to insurance companies;

(4) whether the District Court erred in declaring § 33-1-412(5), MCA, unconstitutional. Reversed and remanded.

Appellant is a member of the National Association of Insurance Commissioners (NAIC). The NAIC developed the Insurance Regulatory Information System (IRIS) to assist in the regulation of insurance companies throughout the nation. The NAIC issues IRIS reports to its members to assist them in reviewing the financial affairs of insurance companies. The reports cover two "phases"; (1) a statistical phase of calculations derived from data supplied by the insurance companies' annual financial statements, and (2) an analytical phase which analyzes the information in the statistical phase. Appellant receives these reports on a regular basis. Appellant and amicus NAIC argue that Montana will not be allowed to participate in the IRIS system if appellant has to divulge the IRIS reports. The record shows that the NAIC

2

publishes explanatory material stating that IRIS reports produced under the two phases are confidential and are furnished to the state insurance departments for regulatory use only.

Respondent Belth is an Indiana resident and the editor of a monthly publication entitled Insurance Forum. In March 1985, he sought access to the IRIS reports in appellant's possession. Appellant initially indicated that respondent would be allowed access to the information. Subsequently, appellant refused to allow access to respondent.

In August 1985, respondent filed a complaint in the Lewis and Clark County District Court seeking a declaratory judgment that would direct appellant to provide him with access to the IRIS information. Respondent relied principally upon Article II, Section 9 of the Montana Constitution (vulgarly called the "Right to Know") as the basis for his complaint. That section provides:

> No person shall be deprived of the right
> to examine documents or to observe the
> deliberations of all public bodies or
> agencies of state government and its
> subdivisions, except in cases in which
> the demand of individual privacy clearly
> exceeds the merits of public disclosure.

In August 1985, the appellant filed her answer asserting, (1) that § 33-1-412(5), MCA, gave her the right to withhold the information; (2) that release of the information could cause unwarranted injury to the insurance companies which were the subjects of the IRIS reports; (3) that the IRIS reports contain matters of individual privacy and are protected from access; and (4) that the IRIS reports contain investigative information which is not a matter of public record. Section 33-1-412(5), MCA, provides:

> The commissioner may withhold from public
> inspection any examination or

investigation report for so long as he deems such withholding to be necessary for the protection of the person examined against unwarranted injury or to be in the public interest.

In February 1986, the respondent Belth moved for summary judgment. In August 1986, the District Court entered judgment for respondent and ordered appellant to provide respondent with access to all IRIS documents in the possession of appellant. The court issued a memorandum explaining its decision and finding that, (1) a corporation (such as the insurance companies analyzed in the IRIS reports) could not assert the right to privacy exception to Article II, Section 9; (2) that no public official, by reason of his or her office or employment, could claim a right of privacy on behalf of an individual; (3) that "[t]here is a constitutional presumption that all documents of every kind in the hands of public officials are amenable to inspection, regardless of legislation, special exceptions being made to accommodate the exercise of constitutional police power and other competing constitutional interests, such as due process;" (4) § 33-1-412(5), MCA, (the statute which appellant relied upon in denying access to respondent) is clearly in conflict with the constitutional "Right to Know" (Section 9 of Article II) because it establishes an area of secrecy without any showing that there is a privacy interest involved, much less a privacy interest clearly exceeding the merits of public disclosure; (5) § 33-1-412(5), MCA, is therefore unconstitutional on its face and unquestionably unconstitutional as applied. This appeal followed.

The first issue is whether a corporation, as well as a natural person, can assert the right to privacy exception to the constitutional "Right to Know." This Court has already ruled on that question. In Mt. States, Etc. v. Dept. of Pub.

4

Serv. Reg. (Mont. 1981), 634 P.2d 181, 38 St.Rep. 1479, we held that a corporation could assert the right to privacy exception.

> [T]he demands of individual privacy of a corporation as well as of a person might clearly exceed the merits of public disclosure, and thus come within the exception of the right to know provision.

Mt. States, Etc., 634 P.2d at 188. Therefore, the District Court incorrectly held that a corporation could not assert the privacy exception to the "Right to Know."

The next issue is whether a governmental agency can assert the privacy interest of another. In Montana Human Rights Div. v. City of Billings (Mont. 1982), 649 P.2d 1283, 30 St.Rep. 1504, we allowed the City of Billings to assert the privacy interests of its employees. The City had argued that if it disclosed personal information about employees without their consent or a court order directing it to do so, it could be sued for revealing the information. We agreed that "potential economic injury is sufficient to establish standing." Montana Human Rights Division, 649 P.2d at 1288. We hold that that same rule allows the appellant to assert the privacy rights of the insurance companies which are the subject of the IRIS information. There is a possibility that the insurance companies could sue the State for appellant's release of injurious information.

The next issue we address is whether the District Court erred in declaring § 33-1-412(5), MCA, unconstitutional on its face and as applied in this case. We disagree that the statute is unconstitutional on its face. Section 33-1-412(5), MCA, allows appellant to withhold certain reports from public inspection where such withholding is "necessary for the protection of the person examined against

unwarranted injury or [is] in the public interest." We note that,

> [i]t is the duty of the courts to uphold the constitutionality of legislative enactments if such can be accomplished by reasonable construction.

North Central Services, Inc. v. Hafdahl (Mont. 1981), 625 P.2d 56, 58, 38 St.Rep. 372, 374. Moreover, "[t]he general rule is that whenever there are differing possible interpretations of statute, a constitutional interpretation is favored over one that is not." Department of State Lands v. Pettibone (Mont. 1985), 702 P.2d 948, 956, 42 St.Rep. 869, 878.

To effect a constitutional interpretation, we hold that the § 33-1-412(5), MCA, exception to public inspection is identical to, and coextensive with, the right to privacy exception to the "Right to Know." In other words, appellant can only invoke the statutory exception when, in the words of Article II, Section 9, "the demand of individual privacy clearly exceeds the merits of public disclosure." We find that the statutory language is simply an alternative expression of the constitutional privacy exception. We believe that this is a reasonable construction of the statute and it fulfills our duty to uphold the constitutionality of legislative enactments. The District Court stated that § 33-1-412(5), MCA, was unconstitutional "as establishing an area of secrecy without any showing, legislatively or otherwise, that there is a privacy interest involved at all, much less a privacy interest that clearly exceeds the merits of public disclosure." We disagree. The statute does not establish an area of secrecy. The statute does authorize appellant to make the initial decision, in line with the

6

constitutional language, whether the privacy rights outweigh the need for public disclosure.

We also disagree with the lower court's ruling that the statute was unconstitutional as applied in this case. The court gave no reasoning behind this assertion nor did the court perform the balancing test between the merits of privacy and disclosure. Apparently, the court found the statute unconstitutional as applied because the application allowed corporations a privacy exception to the "Right to Know" and the court had ruled that corporations could have no such exception. As we ruled above, corporations can assert the privacy exception. Therefore, the court's ruling is in error, as we will develop further in this opinion.

Given the state of the record in this case, we find that this Court is in a proper position to balance the demands of the insurance companies' privacy rights against the merits of public disclosure under the "Right to Know" provision. We believe that this is an instance when this Court "should exercise its undoubted authority to take the initiative in disposing of litigation as expeditiously as possible . . ." Sun River Cattle Co. v. Miner's Bank of Montana (1974), 164 Mont. 479, 481, 525 P.2d 19, 20; quoting State ex rel. La France Copper Co. v. District Court (1909), 40 Mont. 206, 211, 105 P. 721, 723. As a preliminary step, we apply the two-part test this Court has established for determining whether there exists a constitutionally protected privacy interest. That test is "whether the person involved had a subjective or actual expectation of privacy and whether society is willing to recognize that expectation as reasonable." Missoulian v. Board of Regents of Higher Educ. (Mont. 1984), 675 P.2d 962, 967, 41 St.Rep. 110, 116. We find that the insurance companies did have a subjective or actual expectation of privacy in the IRIS reports. As noted

7

previously, NAIC explanatory material states that IRIS reports are confidential and are furnished to the states for regulatory use only. We also find that those expectations of privacy are reasonable. This Court has agreed that,

> [t]ime, place and status are factors in the reasonableness determination. But the determination should include consideration of all relevant circumstances, including the nature of the information sought. (Emphasis in original.)

Missoulian, 675 P.2d at 968. Here, the NAIC warns of the possibility of inaccuracy in the IRIS reports. In this regard, NAIC explanatory material provides the following caveats:

> Two limitations of IRIS are the nonparticipation of some companies, and the keying of the analytical phase to a mechanical process that has some uncontrollable elements. The mechanical process is dependent on the accuracy and standardization of the annual statements filed by the insurers. The ratios cannot identify a misstatement of financial condition or, in certain situations, a statement not prepared in the proper format. Also, there exists the possibility of data processing errors.
>
> IRIS has been reasonably effective in distinguishing between troubled and sound companies. As previously stated, however, the statistical ratios are not in themselves determinative. They are subject to individual company circumstances. From previous sections of this chapter, the following caveats emerge:
>
> 1. No state can rely on IRIS as its only form of surveillance.
>
> 2. Important decisions--such as licensing--are not based on IRIS without

8

further analysis or examination of the company concerned.

3. Valid interpretation of ratio data depends to a considerable extent on the judgement of financial examiners. A company may be outside the usual range because of unusual accounting methods, or matters that have been corrected, or other circumstances.

. . .

5. The criteria for determining usual range values, and the usefulness of such ratios, . . . may not be valid for future experience in different economic periods. For this reason, the components of the ratios are reviewed annually and updated as necessary.

The nature of this information increases the insurance companies' expectations of privacy. Given the NAIC assurance of confidentiality and the admitted possibility of inaccurate information, we hold that the insurance companies' expectations of privacy are reasonable. Therefore, there is a constitutionally protected privacy interest in the IRIS reports.

Finally, we reach the dispositive issue, the balancing test between privacy and disclosure. The demands of individual privacy are established by the affidavit of James Borchardt, the chief examiner of the State Insurance Department. His affidavit states, in part,

3. That the information contained in the IRIS reports constitute a preliminary evaluation of the financial condition of the insurance company being reported on . . .

4. That prior to taking any type of regulatory action against an insurance company a full and complete financial examination is necessary. That the IRIS

9

documents in and of themselves do not adequately provide an accurate picture of the company's financial condition. That to afford a company an opportunity to fully explain its financial condition it is necessary for a qualified examiner or examiners to review the books and records of the company in total.

5. That the IRIS tests while initially pointing out potential problem companies are not dispositive of the issue of financial condition. That there exists a real possibility that a company identified by the IRIS tests as being outside the statistical limits is financially sound. To release the IRIS information without an adequate examination potentially jeopardizes the company's business reputation. (Emphasis added.)

We find that the privacy interest at stake is a substantial one. Parenthetically, we note that Borchardt's affidavit supports our conclusion that the insurance companies' expectations of privacy are reasonable.

Respondent argues that there is a substantial benefit in disclosing the IRIS reports. Respondent's affidavit indicates the reports are useful in identifying companies experiencing financial difficulties or with imminent problems. We agree that there would be some public benefit to disclosure. We do not find that that benefit would outweigh the demands of individual privacy. The benefits of disclosure are diminished by the availability of similar final, relatively non-subjective examinations made by the State. Montana's regulatory scheme for insurance companies includes the following provisions. Section 33-1-401, MCA, provides that the insurance commissioner "shall examine the affairs, transactions, accounts, records, and assets of each authorized" domestic insurer at least once every three years

10

and of other authorized insurers as he deems advisable. The commissioner may accept another state's examination in lieu of making her own. Section 33-1-412, MCA, provides that the commissioner shall make a report of each examination and that such reports "shall comprise only facts appearing from the books, papers, records, or documents" or ascertained from sworn testimony. That section also states (1) that the entity examined shall receive a copy of the report, (2) for the possibility of a hearing on the report, and (3) for modifying the report as the commissioner deems proper. Section 33-1-412(5), MCA, also provides that the commissioner can withhold such reports, as we held above, in accordance with the constitutional "Right to Know" provision. Under § 33-2-701, MCA, every authorized insurer must file an annual financial statement with the commissioner. Section 33-1-312, MCA, provides in part:

> (1) The commissioner shall enter in permanent form records of his official transactions, examinations, investigations, and proceedings and keep such records in his office. Such records and insurance filings in his office shall be open to the public inspection except as otherwise provided in this code with respect to particular records or filings.

Finally, § 33-2-721, MCA, requires each product liability insurer to file an annual, detailed busines report, including information on premiums collected, earned premiums, incurred losses, loss reserves, etc. Those reports are available to the public for a reasonable fee. Section 33-2-722, MCA. The IRIS reports differ from the above described State examinations in their preliminary, subjective nature. It is this preliminary, subjective quality which particularly intrudes upon the privacy interest at stake.

11

Given the availability of other comparable information and the preliminary, subjective nature of the IRIS reports, we hold that the demands of individual privacy outweigh the merits of public disclosure. Thus, the appellant may properly deny respondent Belth access to the IRIS reports. A further result is that, contrary to the District Court order, § 33-1-412(5), MCA, is constitutional as applied in this case to deny access to respondent.

Reversed and remanded for entry of judgment in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

12

Mr. Justice William E. Hunt, Sr., dissenting:

I agree with the dissent of Justice Sheehy.
Judge Bennett should be affirmed and the citizen's right to know should be upheld.

The majority finds many devils lurking in the future that will take advantage of our foolishness if our balancing act comes down on the side of the insurance buyer and our right to know. For example the majority is concerned that the state might be sued if the commissioner releases injurious information about an insurance company. There is another side to that coin. As long as we are going to speculate, then in my view, to allow a company flying distress signals observable only to the commissioner but hidden from potential customers presents far more interesting possibilities for future litigation than the release of information furnished by the industry.

As Justice Sheehy says in his dissent, "It approaches inanity to hold that Montana insureds shall not be allowed to know which troubled companies are doing business in Montana or that they are troubled companies."

A company in trouble or showing signs of trouble would certainly want privacy, but the realistic expectation is something else. In balancing the right to privacy of a relatively sophisticated insurance company doing business in Montana with the rights of generally less informed consumer-citizens who seek to purchase insurance, I would hold that the expectation of the citizen to know about the company clearly outweighs the need of a state agency to warehouse information in secrecy and deny citizens the right to be informed.

The District Court should be affirmed.

_____
Justice

- 13 -

Mr. Justice John C. Sheehy, dissenting:


I dissent. The majority opinion goes far beyond the right of Joseph M. Belth from Indiana to gain access to IRIS reports. The majority in effect have told Montana citizens that they have no right to examine certain information in IRIS reports on hand in the office of the State Auditor and Insurance Commissioner about insurance companies with which Montanans do business. For that reason alone the majority opinion is inexcuseable and indefensible.

The majority opinion defies Article II, Section 9, Montana State Constitution (1972) which states:

> Right to know. No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

The question which we should be deciding in this case, and which is decided adversely by the foregoing majority opinion, is whether Montanans have a right to know that an insurance company doing business in this state has been identified as a "troubled company" by IRIS, and that such "troubled company" is being licensed or continues to be licensed by the state auditor. If the "right to know" provision of the state Constitution means anything, it means that this specific information should be available to Montana insureds and to any organization or entities that would funnel such information to Montana insureds.

In discussing this issue, I take as given that a corporation as well as a natural person can assert the right to privacy under the exception to the constitutional right to know because we said so in Mountain States Telephone and

Telegraph Co. v. Department of Public Service Regulation (Mont. 1981), 634 P.2d 181, 38 St.Rep. 1479. I also accept as given what the District Court found, that § 33-1-412(5), MCA, if otherwise valid, applies as well to investigation reports as to examination reports which are specifically covered under that section.

Unexplained and undiscussed by the majority is how public domain information, open to anyone, becomes private when it is run through a computer. Also unexplained and undiscussed by the majority is why or how Montanans should be precluded from information which would tell them how insurance companies licensed in this state stack up when compared with other insurance companies in the same business.

We are informed how the IRIS system works by the brief of amicus NAIC [National Association of Insurance Commissioners]. Its brief states:

> Once a year the NAIC disseminates statistical reports to each state insurance department. The reports set forth a usual range of ratio results based on previous studies. IRIS ratios are run on certain items taken from the annual statements such as surplus or premium and are compared to the usual range. If the results of the testing produce values outside of the normal range, this indicates a need for further examination. The NAIC then prepares a list which highlights those companies reflecting values outside the normal range. At this point, insurance regulators take this information and combine it with their own internal methods of analyzing solvency. Internally, a department's examiner will conduct a detailed analysis of all of the information which has been submitted.
>
> The ratios discussed above are published and are available to the Respondent. The ratio results are actually compiled from annual statements, which statements are also available to the Respondent. The results are not produced from any secret source of material which state open records acts are designed to reveal. The ratio results, however,

are confidential work product of the NAIC and are shared with its member regulators solely on the basis that the results are not to be divulged to the public.

The analytical phase of the IRIS employs a team of examiners and financial analysts to review the ratio results. Companies selected for review are those which were designated with four or more ratios outside of the normal range, in addition to the companies targeted as requiring attention in the previous year. <u>The overall objective of IRIS is to identify companies which appear to require immediate regulatory attention</u>. (Emphasis supplied.)

The majority opinion has erected a wall between Montanans and the information that regulators have determined some companies "appear to require immediate regulatory attention." Such companies have been given an unwarranted right to privacy by the majority.

No types of corporations are so affected with the public interest as are financial institutions, which include insurance companies. It is because of this public interest that such corporations are so highly regulated by both state and federal authorities. Insurance companies, however, are not subject to federal regulation. Even though insurance companies are part of interstate commerce, United States v. South-Eastern Underwriters Association (1944), 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, the Congress delegated to the states the duty of regulating insurance companies under the McCarran-Ferguson Act. 15 U.S.C. §§ 1011 through 1015. The principal regulators in each state have formed the National Association of Insurance Commissioners, with two ends in mind, one, to provide effective regulation of insurance companies, and at the same time to make the regulation as little onerous as possible. We are told that IRIS was established in 1971 for the property and casualty industry as

an aid to state regulators of companies engaged in such industry.

Because insurance companies are affected with the public interest, and because their activities are broadly regulated, the expectation of privacy of an insurance company does not begin to rise to the level of a mining company or retail store chain.

From the viewpoint of regulation, three kinds of insurance companies may be authorized to do business in this state: (1) domestic insurers, that is those domiciled or having their home office in this state; (2) foreign insurers, that is companies domiciled or having their home office outside of Montana but in one of the United States or its territories; and (3) alien insurers, that is insurance companies domiciled in a foreign country and represented in the United States by a manager (or in the case of Canada, an officer of the Canadian corporation). See §§ 33-2-111 and 33-2-215, MCA.

An insurance company, whether domestic, foreign, or alien, desiring to do insurance business in this state must obtain a certificate of authority from the commissioner who in this state is the state auditor. Section 33-2-101, MCA. Each authorized insurer may be examined as to its affairs, transactions, accounts, records and assets as often as the state auditor deems advisable but domestic insurers must be examined not less frequently than every three years. Section 33-1-401, MCA. All the other states have like provisions requiring examinations. Obviously if the separate examiners from the 50 states descended willy-nilly on insurance companies authorized to transact business in the respective states, the company business would be disrupted and the cost would be burdensome. To avoid this problem, the NAIC supervises examinations in an orderly manner in which the

states participate on a regional basis and the examination results are made available to all the states in which the insurer is authorized. The examinations, as far as Montana is concerned, are at the expense of the insurer. Section 33-1-413, MCA.

The IRIS system conducted by the NAIC applies, as we have said, to the property and casualty business. The ratios which are used in IRIS are published, and are open to the public.

Each authorized insurer is required to file with the state auditor annually a statement of its financial condition, transactions and affairs as of the December 31 preceding. Section 33-2-701, MCA. Those statutory provisions which make the investigation and examination reports confidential do not apply to annual statements. Section 33-1-412(5), MCA. The material contained in the annual statement is open to the public.

Thus the basic information used by IRIS is public information. IRIS utilizes published ratios and applies those ratios to filed annual statements, to achieve results which IRIS now considers confidential. It is nonsense to hold that there is an expectation of privacy in the results so derived from public information. It approaches inanity to hold that Montana insureds shall not be allowed to know which troubled companies are doing business in Montana or that they are troubled companies. Such companies should have the least possible expectation of privacy.

The problem presented in this case has two phases which should be closely examined, 1), whether NAIC, by itself, can impose confidentiality so as to overrule our constitutional right to know and 2), whether the state auditor, under § 33-1-412(5), MCA, may withhold from public inspection an

- 18 -

investigation report obtained with tax monies, which report she uses in the regulation of insurers.

It should be clear that our constitutional provision for right-to-know does not depend on a classification of confidentiality by the NAIC. In San Gabriel Tribune v. Superior Court (Cal. App. 1983), 192 Cal. Rptr. 415, it was held that assurances of confidentiality by the city to a disposal company that the data would remain private was not sufficient to convert what was a public record into a private record. If we countenance such assertion of confidentiality, the right to know provision will soon become worthless.

As to the second phase, District Judge Gordon Bennett concentrated on whether § 33-1-412(5), MCA, was constitutional so as to empower the state auditor to withhold the information. The District Judge found that § 33-1-412(5), was unconstitutional facially and as applied. His determination ought to be sustained by us.

The opening paragraph of District Judge Bennett's discussion on right-to-know is worth repeating:

> An extraordinary theme ran through the proposal and consideration of three entirely novel sections of the 1972 Constitution. They were the "right of participation" Section (8), sometimes called the "open meeting" section; the "right to know" Section (9), and the "right to privacy" Section (10) all found in the "declaration of rights" Article II. The theme was that except as it may be limited by the right of the individual to personal privacy, there is to be in Montana a broad-based, pervasive and absolute right of citizens to know what is going on in their government and a right to participate in government untrammeled by the government itself.

As District Judge Bennett indicated, in determining right to know, the three sections of Article II, Sections 8, 9, and 10 must be read together. Section 10 provides for a right of individual privacy (which we have determined applies

- 19 -

to corporations) which shall not be infringed without the showing of a compelling state interest. Section 9 gives all persons a right to examine documents and to observe the deliberations of all public bodies or agencies of state government except where the demands of individual privacy clearly exceed the merits of public disclosure. Section 8 requires governmental agencies to afford a reasonable opportunity for citizens' participation in the operation of agencies prior to the final decision "as may be provided by law." It should be clear because the insurers are so affected with a public interest, because the affairs of their insureds are so dependent on insurers, and because property and casualty losses may affect third parties that there is a compelling state interest which overrides any right of individual privacy of an insurer to open up information that an insurance company doing business in this state is "troubled." The state auditor and the NAIC contend that divulging such information may result in "a run on the company" but it may be more important to the insured to make that run before the company is found insolvent or its certificate of authority is jerked. Section 8 obviously intends that governmental agencies open up such information prior to the final decision of the regulators.

In the light of the three sections of Article II, District Judge Bennett determined that § 33-1-412(5) was facially unconstitutional and invalid as applied. That particular statute was adopted in 1959, before the adoption of the state constitutional provisions in the convention of 1972. This is the first case in which the provisions of § 33-1-412(5) have been examined in the light of those constitutional provisions. District Judge Bennett made an extensive review of the proceedings of the constitutional convention, and from it determined that an act of the

legislature which in effect performs the balancing function between the right to know and the right of individual privacy was not within the grant of the convention. He found it to be the prerogative of the courts, and not the legislature to define "parameters and incidents of the rights guaranteed by Sections 9 and 10." He therefore held that while government agencies may be authorized by appropriate legislation to perform initially the balancing act between the right to know and the right to privacy "it is the exclusive function of the state's courts to make final determination as to which right is dominant in any given case."

With a proper regard therefore to what the constitutional convention intended in adopting Sections 8, 9, and 10 of Article II, we should examine the reasons postulated by the NAIC and the state auditor for confidentiality in this case. What are those reasons?

First it is contended that insolvency of the insurer could result in a "run on the company" instigated by misinterpretation of IRIS data by those not trained to interpret the test results. That claim is pretty far-fetched. If insureds cancel their property and casualty policies, their premium refunds would be calculated on the short rate basis which would be adequately covered by the companies unearned premium reserves. Section 33-2-512, MCA.

Secondly we are told that those responsible for IRIS data collection fear they may be potentially liable for errors in reporting. If the IRIS data is that unreliable, perhaps the state auditor ought not to use the information in any event.

Third, we are told that if the Montana Insurance Department is required to disclose IRIS results, it will not be able thereafter to participate in the IRIS system which, it is contended, would have a devastating effect on the

Department's ability to monitor the solvency of its domestic as well as foreign companies. Montana has few if any domestic property and casualty insurers, and we doubt if the state auditor would be long in finding out, if it should occur, that a domestic insurer was in fact a "troubled company" under IRIS determinations. Other states would be monitoring foreign companies.

Finally, we are told that IRIS information is important to the state auditor in determining whether to authorize a foreign insurance company to do business in Montana. Again, astute questioning by the state auditor of an applicant for a certificate of authority would quickly determine its IRIS standing.

None of these contended reasons for withholding information contained in IRIS by the state auditor overweigh the right of our citizens to participate in the debate before their governmental bodies before the final decision, and to have access to information which is in the hands of public officials. Therefore I would sustain the District Court.

_____
                Justice