IN THE SUPREME COURT OF THE STATE OF MONTANA

81-453

MONTANA HUMAN RIGHTS DIVISION,

Petitioner and Appellant,

v.

CITY OF BILLINGS, COUNTY OF YELLOWSTONE,

Respondent and Respondent.

ORDER

The first paragraph of the opinion is amended to read,

"The Montana Human Rights Commission, acting through its staff, the Montana Human Rights Division (herein referred to as HRC), appeals from summary judgment and a final judgment of dismissal in the Thirteenth Judicial District Court. We vacate the judgment and remand the cause for further action by the District Court."

DATED this 2nd day of September, 1982.

For the Court

_Frank J. Haswell_
Chief Justice

_John Conway Harrison_

_John C. Sheehy_

_Justices_

FILED

SEP -2 1982

Thomas J. Kearney
CLERK OF SUPREME COURT
STATE OF MONTANA

No. 81-453

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

MONTANA HUMAN RIGHTS DIVISION,

Petitioner and Appellant,

vs.

CITY OF BILLINGS,

Respondent and Respondent.

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone
Honorable Diane G. Barz, Judge presiding.

Counsel of Record:

For Appellant:

Frederick F. Sherwood argued, Helena, Montana

For Respondent:

McNamer, Thompson and Cashmore, Billings, Montana
Charles Cashmore argued, Billings, Montana
K. D. Peterson argued, City Attorney, Billings, Montana

Submitted: May 20, 1982

Decided: August 16, 1982

Filed: AUG 1 6 1982

Thomas J. Kearney
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The Montana Human Rights Commission (HRC) appeals from summary judgment and a final judgment of dismissal in the Thirteenth Judicial District Court, in this employment discrimination action. We vacate the judgment and remand the cause for further action by the District Court.

The sole issue before this Court is whether, as a matter of law, the HRC may, as part of its investigation of a discrimination complaint, require an employer to submit certain evidence relating to persons other than the complainants.

Four persons filed discrimination complaints with the HRC against the City of Billings. William Wong alleged that he was discriminated against because of his Chinese ancestry, in his bid for promotion to Sergeant with the Billings Police Department. Jerry Klundt charged that he had been denied merit or step increases and had been demoted because of his Crow Indian background and in retaliation for union activities and for having filed a charge of discrimination. Win Poynter alleged that she had been passed over for promotion at Billings' Logan International Airport because of her sex, and jobs for which she was qualified had been filled by less qualified male applicants. Jesse Gonzales (who has since withdrawn his complaint) alleged that he was denied a five-year pay increase as a civilian employee of the Billings Fire Department and assigned undesirable shifts despite his seniority because of his sex and his Mexican-American background.

During its investigation of these complaints, the HRC submitted a supplemental interrogatory to the City of Billings, requesting personnel files, employee evaluations,

disciplinary records, test scores and application materials for complainants and certain other employees and applicants for employment with the City of Billings. When the City did not comply with the HRC's request, the HRC issued subpoenas duces tecum, pursuant to section 49-2-203, MCA, demanding the information. The City answered that it "would not voluntarily turn over to [the HRC] the personnel files and test scores for the individuals requested other than the charging parties without consent of the persons that are the subjects of the personnel files unless of course there was a court order directing us to do so."

On March 12, 1981, the HRC filed a petition with the District Court, for enforcement of the subpoenas duces tecum, against the City of Billings. The City responded that the information sought by the HRC is personal, and releasing it without prior consent of the individuals in-volved "may constitute an invasion of those persons' privacy and may render the City liable for that invasion."

By stipulation, filed June 17, 1981, the parties agreed to the consolidation of the HRC's action against the City of Billings with a pending action by the HRC against the County of Yellowstone. Katherine Webster had filed a complaint with the HRC, alleging that she was discriminated against in hiring by the Yellowstone County Sheriff's Department on the basis of her sex, race, and marital status. Like the City, the County had refused to produce employment applications and other information pertaining to the other individuals who had applied for the position(s) for which Ms. Webster had applied.

On August 7, 1981, after a July hearing on the matter, the District Court denied the HRC's motion for summary

judgment, and granted the motion of the City and County for summary judgment. The accompanying memorandum of the District Court indicated the court's determination that (1) the disputed information is subject to the protection of Article II, Section 10, Mont. Const.; (2) respondents are not in a position to provide the information without the consent of the individuals whose right of privacy is affected; and (3) the HRC had shown neither a compelling state interest in obtaining the information, nor exhaustion of other sources of obtaining the information. The District Court entered its judgment of dismissal in favor of the City and County on September 28, 1981. The HRC appeals.

The complainants have filed complaints with the Federal Equal Employment Opportunity Commission alleging that respondents' actions violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000 et seq. That Commission, pursuant to section 706 of Title VII, is awaiting the outcome of this action before moving on complainants' charges.

I.

Article II, Section 10, of the Montana Constitution states:

> "Right of Privacy. The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest."

The Transcript of the 1972 Constitutional Convention clearly indicates the significance to the delegates of this right, which nowhere appears in the Federal Constitution but has been judicially inferred from the provisions of the Bill of Rights. Delegate Campbell read into the record an editorial statement from the Montana Standard, February 3, 1972, here included in part:

"We think the right of privacy is like a
number of other inalienable rights; a
carefully worded constitutional article
reaffirming this right is desirable. Wade
Dahood of Anaconda, Chairman of the Bill
of Rights Committee, hit the nail on the
head when he said: 'As government functions
and controls expand, it is necessary to ex-
pand the rights of the individual.' The
right to privacy deserves specific protec-
tion." Tr. of the Montana Constitutional
Convention, Vol. V, p. 1681.

Indeed, at one point, the delegates struck out the phrase

requiring a compelling state interest, because, in the words

of Delegate Harper:

". . . that may be interpreted by whatever
state agency happens to have an interest in
invading my privacy at that particular time."
Tr. at p. 1682.

David Gorman, in an article entitled "Rights in Collision:

The Individual Right of Privacy and the Public Right to

Know," 39 Mont. L. Rev. 249, 251 (1978), noted that the

delegates' decision to include the phrase after all was

intended to strengthen rather than weaken the constitutional

protection afforded the individual right to privacy:

"When the amended provision was reported out
of the Style and Drafting Committee the dele-
gate who had offered the deleting amendment
moved for reconsideration, supporting his
motion by saying that his general intent, to
strengthen the protection of the individual,
was not served by his amendment. The debate
on the motion to reconsider (which passed)
and the subsequent motion to reintroduce the
'compelling state interest' test was lively.
Various delegates took the positions that the
standard was implicit, that the right of privacy
had been rendered absolute, that the amended
provision was meaningless to a court, and that
in default of any explicit standard the courts
could choose to apply a mere 'reasonableness'
test to defeat privacy rights. It was this
last argument which apparently swayed the con-
vention as a whole, and the 'compelling state
interest' test was restored.

"This explicit statement of the weight to be
accorded to the right guaranteed by the provi-
sion places a heavy burden on the state. It
has even been suggested that the task faced by

> the state of showing a compelling interest is,
> in most situations, an impossible one. Clearly
> the delegates placed a very high value on the
> right of privacy, and they forcefully indicated
> that the courts were to accord it every pro-
> tection available under this most stringent
> standard of judicial review." 39 Mont. L. Rev.
> at 251.

There can be little doubt that the federal protection is less stringent and would allow discovery without requiring a showing of compelling state interest under these circumstances. The Tenth Circuit Court of Appeals addressed the question in the context of privacy rights under the Fourth Amendment, in Equal Employment Opportunity Commission v. University of New Mexico, Albuquerque (10th Cir. 1974), 504 F.2d 1296, 1302, a case raising a legal issue similar to the present one:

> "The law governing the limits on the adminis-
> trative power of investigation has evolved
> from the earlier judicial condemnation of
> fishing expeditions to that of enforcement of
> the subpoena power 'if the inquiry is within
> the authority of the agency, the demand is not
> too indefinite, and the information sought is
> reasonably relevant.' United States v. Morton
> Salt Co., 338 U.S. 632, 652, 70 S.Ct. 357,
> 369, 94 L.Ed. 401 (1950)."

The court concluded that, under federal law,

> ". . . today that which we have previously
> considered to be administrative 'fishing
> expeditions' are often permitted; and that
> administrative subpoenas may be enforced
> for investigative purposes unless they are
> plainly incompetent or irrelevant to any law-
> ful purpose." 504 F.2d at 1303.

In the present case, the HRC seeks information which the District Court recognized as relevant to proper investigation by the HRC of the employment discrimination complaints; the subpoenas clearly indicate the information which is sought. Under the federal standard, discovery of the personnel files and records would not be restricted by a penumbral right of privacy.

However, as noted, Montana's constitutional right of privacy is explicit. This Court has recognized that the protection it offers is more substantial than that inferred from the Federal Constitution. In State v. Hyem (1981), ____ Mont. ____, 630 P.2d 202, 38 St.Rep. 891, we upheld the application of the exclusionary rule to private searches which invaded the privacy rights of individuals, a protection not found under the Federal Constitution. Therein we stated:

> "Privacy has been defined as the ability to control access to information about oneself. Fried, Privacy (1968), 77 Yale L.J. 475, 482, 483." 630 P.2d at 209, 38 St.Rep. at 898.

The HRC argues that enforcement of the subpoenas duces tecum would not be an infringement of a privacy right here, because no privacy right exists where there is no statutory privilege (see section 26-1-801, et seq., MCA), and where an employee or applicant for employment voluntarily submits the information to a third party. The HRC relies upon Hastetter v. Behan (1982), ____ Mont. ____, 639 P.2d 510, 39 St.Rep. 100, wherein this Court relied upon federal case law in upholding the respondent's disclosure of appellant's telephone records. We quoted Smith v. Maryland (1979), 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220:

> "'Second, even if petitioner did harbor some subjective expectation that the phone numbers he dialed would remain private, this expectation is not "one that society is prepared to recognize as 'reasonable.'" This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.'" (Citations omitted.) 639 P.2d at 512-513, 39 St.Rep. at 103.

We find the HRC's reliance upon Hastetter, supra, misplaced. This Court is not bound to give precedential value to dicta, State v. Gopher (1981), ____ Mont. ____, 631

-7-

P.2d 293, 296, 38 St.Rep. 1078, 1081-82, and we must abandon that language of Smith, supra, which, incorporated into Hastetter, appears to deny the protection of section 10 to all communications voluntarily given to third parties. Hastetter's holding was that the appellant had no reasonable expectation of privacy in telephone records justifying constitutional protection. In Hastetter, the disputed information was not the contents of the communication, the privacy of which was not addressed by this Court, but the fact of communication. That information was known by appellant to be recorded by the phone company for a number of business purposes. We were not persuaded that appellant could have reasonably expected the numbers he dialed to remain secret.

In the present case, the personal information submitted to employers by prospective and current employees, and that contained in materials compiled by employers is quite different from the relatively innocuous telephone records in Hastetter. While we are aware that much of the information contained in employment files and records is harmless or is already a matter of general knowledge, we are not persuaded that the records are entirely free of damaging information which the individuals involved would not wish and in fact did not expect to be disclosed. The standard set forth in Hastetter is whether the party involved subjectively expected the information to be and remain private, and whether society is willing to recognize that expectation as reasonable. This standard was adopted by the Supreme Court in Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576.

Employment records would reasonably contain, among less

sensitive information, references to family problems, health problems, past and present employers' criticism and observations, military records, scores from IQ tests and performance tests, prison records, drug or alcohol problems, and other matters, many of which most individuals would not willingly disclose publicly. Some testing and disclosure (e.g., past employment records, prison records, drug or alcohol use) is a necessary part of many applications for employment; other information may be compiled by present employers or may be submitted by an employee in explanation of absence from work or poor performance on the job. It is clear that there is frequently pressure upon an employee to communicate these matters to his employer in the privacy of his boss's office or on an application for employment or promotion. And while, as far as we know, respondents gave their employees no specific assurances of confidentiality, we believe that employees would reasonably expect such communication normally would be kept confidential. Therefore, we find that under the circumstances of this case, the information requested by the HRC is subject to the protection of Montana's constitutional right of privacy (§10).

The HRC argues that because an employee knows information concerning his employment may be sought by prospective employers in the future, he may not reasonably expect it will never be divulged to anyone else. It may well be unreasonable for an employee to expect that this information will never be divulged to prospective employers. It does not necessarily follow that, therefore, this information is unprotected by the right of privacy under all other circumstances, even where an employee can reasonably expect it will not be divulged, such as in an investigation or during

a public hearing in which the employee is only remotely involved. The right of privacy turns on the reasonableness of the expectation, which may vary, even regarding the same information and the same recipient of that information.

We hold that the District Court correctly found that the information sought by the HRC is protected by Montana's constitutional right of privacy.

We note in passing the HRC's claim that respondents have no standing to assert the constitutional rights of their employees in refusing to comply with the HRC's subpoenas duces tecum. One who is neither injured nor jeopardized by the operation of a statute cannot challenge its constitutionality. State v. Kirkland (1979), ____ Mont. ____, 602 P.2d 586, 590, 36 St.Rep. 1963, 1966. Here, respondents argue that disclosing personal information about employees and applicants for employment without the consent of those individuals involved or without a court order forcing them to disclose, places them in jeopardy because it could lead to their being sued by those individuals for revealing private information. Other courts have held, and we agree, that potential economic injury is sufficient to establish standing. In Falcon v. Alaska Public Offices Commission (Alaska, 1977), 570 P.2d 469, the court found a doctor had the right to deny, on behalf of his patients, government access to his files, because such disclosure could discourage prospective patients.

## II.

The delegates to the 1972 Constitutional Convention recognized that the right of privacy is not absolute, and that under certain circumstances, the State's interest in obtaining information about individuals may outweigh the

individuals' right of privacy. Tr. of the Montana Constitutional Convention, Vol. VI, p. 1851.

In State ex rel. Zander v. District Court (1979), 181 Mont. 454, 458-459, 591 P.2d 656, 660, we recognized the rule:

> "From these cases and our constitutional language certain principles of law emerge. The right of individual privacy is a fundamental constitutional right expressly recognized as essential to the well-being of our society. The constitutional guarantee of individual privacy is not absolute. It must be interpreted, construed and applied in the light of other constitutional guarantees and not in isolation. The right of individual privacy must yield to a compelling state interest."

See Hyem, supra, 630 P.2d at 205-206, 38 St.Rep. at 894:

> "Under the 1972 Montana Constitution, the only exception to the restriction against the invasion of individual privacy is a compelling state interest."

Here we find a compelling state interest which itself arises from the Montana Constitution. Article II, Section 4, of the Montana Constitution states:

> "The dignity of the human being is inviolable. No person shall be denied the equal protection of the laws. Neither the state nor any person, firm, corporation, or institution shall discriminate against any person in the exercise of his civil or political rights on account of race, color, sex, culture, social origin or condition, or political or religious ideas."

This section was unanimously adopted by the delegates.

Under the Montana Human Rights Act of 1974, section 49-1-102, MCA, provides that the right to be free from discrimination includes the right to obtain and hold employment without discrimination. The Human Rights Commission, administrative watchdog over discriminatory practices in Montana, possesses subpoena power as provided under section 49-2-203, MCA:

"(1.) The commission may subpoena witnesses, take the testimony of any person under oath, administer oaths, and, in connection therewith, require the production for examination of books, papers, or other tangible evidence relating to a matter either under investigation by the commission staff or in question before the commission. . ."

The investigative powers of the HRC must be broad enough to allow a thorough scrutiny of the circumstances surrounding complaints of discrimination. The scrutiny in the present case must involve comparison of employee records, applications, evaluations, tests, etc. There is simply no other way for the HRC to determine whether the City and County discriminated in the ways alleged by complainants. A consideration of the complainants' files alone would not yield the comparative data which is essential here. To deny the HRC access to the material it seeks renders ineffectual a substantial portion of its statutory investigative powers, and is a large step toward drawing the teeth of the HRC. That we are unwilling to do.

Respondents argue, and the District Court found, that because the HRC did not seek the consent of the individuals involved to its perusal of their employment records, that it had not exhausted its means of obtaining the information, and thus had not established a compelling state interest.

We do not agree, for several reasons. In the first place there are well over one hundred files involved. The time, cost, and inconvenience of the search for individual employees, past and present, and the attempt to gain their consent, would be prohibitive. Undoubtedly, a good many individuals, particularly those who may have been hired or promoted because of an employer's discriminatory rejection of more qualified or equally qualified applicants, would

refuse the HRC access to the files. The respondents have suggested that, in that event, the files could be subpoenaed directly from the individual employees; that would be impracticable and would lead to yet more litigation. Finally, some employees whose files are sought may have died or left the area, or simply may be impossible to track down. The only reasonable, thorough and relatively efficient means of obtaining access to the files is through the employer. We do not find that the HRC has failed to establish a compelling state interest by failing to contact and obtain the permission of those employees and ex-employees of the City and County whose files they seek. The practical realities of the situation, and the greater importance of the protection from discrimination convince us that the HRC has made a sufficient showing of a compelling state interest, and that the disputed files and materials must be made available to the HRC.

The respondents suggest that test scores and other arguably sensitive material could be altered in such a way that the names of the employees would not be disclosed to the HRC, and thus the intrusion would be less objectionable. The HRC correctly points out that many names are indicators of racial origin, frequently of sex, and in some cases of marital status, which information might not be available in the file itself. Furthermore, the HRC objects to any alteration of files because, at that point, the accuracy of the HRC's investigation depends upon the good faith of the employer, the very party charged with discriminatory behavior, whose temptation to doctor files undoubtedly increases with the likelihood the HRC will find that employer guilty of discriminatory practices.

We agree with the HRC, that all information in the employers' personnel files, which could reasonably cast some light on the truth or falsity of complainants' allegations, and which is included under section 49-2-203, MCA, should be subject to the investigative subpoena of the HRC.

### III.

We have concluded that it is necessary that respondents provide the requested information to the HRC. It is also necessary to establish some substantial protection of the privacy of those individuals whose files are made available to the HRC. It is apparent that there must be a step by step learning process involved, in which the administrative agencies and the courts will determine on a case by case basis how the right to privacy and the right to know should be balanced.

The HRC argues that its regulation providing for confidentiality in investigations sufficiently protects the individuals involved. The regulation states:

> "Confidentiality. (1) Neither a charge nor information obtained in the investigation of a charge, nor any records required by the Commission to be filed with the Commission shall be made matters of public information by the Commission prior to the certifying of a case for public hearing (including hearing on a no cause finding, a default hearing or a hearing alleging violation of a conciliation agreement). This provision does not apply to such earlier disclosures to the Charging Party, the Respondent, witnesses, counsel, and representatives of interested Federal, State and local agencies as may be appropriate or necessary to the carrying out of the Commission's functions under the act, nor to the publication of data or abstracts derived from such information in a form which does not reveal the identity of the charging party, respondent, or person supplying the information. The Commission may enter into agreements with any federal, state, or local governmental agency for the deferral of complaints or sharing of information regarding complaints which agreements may

> require more stringent standards of confiden-
> tiality with regard to such complaints or such
> information." Administrative Rules of Montana
> §24.9.212.

There is very limited protection in this regulation so far as the right of privacy is concerned. The restriction on the Commission does not apply to an early disclosure to the charging party, the respondent, witnesses, counsel, and representatives of interested agencies. In itself, this disclosure could be sufficient to eliminate the effective protection of the right of privacy. In addition, if the HRC certifies a case for public hearing, then it is up to the Commission to decide the extent and nature of the information to be given at the public hearing. We do not find this regulation to be an adequate protection of the right of privacy.

We are aware that clamping too tight a lid on the HRC's freedom to disseminate the information obtained from respondents establishes yet another constitutional conflict.

In Kuiper v. District Court (1981), ___ Mont. ___, 632 P.2d 694, 696-698, 38 St.Rep. 1288, 1290-1292, this Court reversed a District Court order forbidding use of certain documents already in the possession of the appellant "for any purpose whatsoever," finding the order unconstitutionally proscribed appellant's freedom of expression. We agreed that First Amendment protection extended to litigation and to the fruits of discovery, 632 P.2d at 698, 38 St.Rep. at 1291, and agreed with Judge Bazelon in In re Halkin (D.C. Cir. 1979), 598 F.2d 176, 186, that while a protective order is not automatically a prior restraint, "the fact that [it] poses many of the dangers of a prior restraint is sufficient to require close scrutiny of its impact on protected First

-15-

Amendment expression." 632 P.2d at 697, 38 St.Rep. at 1291.

We referred to the three-prong test used in Nebraska Press

Ass'n. v. Stuart (1976), 427 U.S. 539, 96 S.Ct. 2791, 49

L.Ed.2d 683, and Halkin, supra, requiring the court to find

that the harm posed by dissemination is substantial and

serious, the restraining order is narrowly drawn and pre-

cise, and there is no less intrusive alternative means of

protecting the public interest.

In Mountain States Telephone & Telegraph Company v.

Department of Public Service Regulation (1981), ____ Mont.

___, 634 P.2d 181, 38 St.Rep. 1479, this Court issued a

protective order to prevent the public disclosure of "trade

secrets" which the Court held could be obtained by the

agency during its investigation. The broad rationale ap-

plies to this case: During an appropriate investigation, the

agency is entitled to all pertinent information possessed by

an entity subject to its regulating power; when the public

right to know collides with that entity's right to protect

certain private information, a balancing of rights is neces-

sary; a protective order may be fashioned which allows the

agency the "fullest available information," while providing

the public with "all information required to enable citizens

to determine the propriety of governmental actions affecting

them." We relied upon Pennzoil Co. v. Federal Power Commis-

sion (5th Cir. 1976), 534 F.2d 627, 631:

> "Implicit in [F.C.C. v. Schreiber (1965), 381
> U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383] is
> the proposition that the balancing of the pub-
> lic and private interests might compel secrecy.
> . . Therefore, in reviewing this case we must
> likewise determine whether the Commission abused
> its discretion in balancing the public and pri-
> vate interest." 634 P.2d at 187, 38 St.Rep. at
> 1485.

We found that the District Court's failure to protect the trade secrets was improper because a satisfactory balancing of interests could have been achieved, and we issued a directive for a protective order. The order allowed full disclosure to the PSC and sought to limit the release of private information by "provisions which protect the confidentiality of the trade secret information." 634 P.2d at 187, 38 St.Rep. at 1485-1486.

In the case at bar, much of the problem with restricting dissemination by the HRC, or public access to the information in the disputed personnel files, lies in the fact that some of that information is undoubtedly neither sensitive nor private information, and, if viewed apart from the more damaging information, as it must be if a protective order is to be narrowly drawn, is neither subject to the protection of the privacy right, nor particularly relevant to the investigation at hand.

We conclude that the needs and rights of the parties and the persons whose files are sought, as well as the general public, are best met by allowing broad discovery to the HRC, but restricting the release of information which suggests the identity of employees whose files may be used in investigating the alleged discriminatory practices by respondents. We therefore direct the District Court to prepare an order requiring respondents to furnish the requested information to the HRC, but providing that the HRC shall not disclose the information to any individual, agency or party (other than respondents) outside of the HRC except under the following circumstances:

(1) In the event that the HRC deems it necessary to hold a public hearing on the alleged discriminatory prac-

tices, or to disclose the information to anyone outside the HRC (other than respondents), it shall protect the privacy of any person(s) as to the elements of such information by altering the information to provide for the anonymity of the person(s) involved. This will include the elimination of names, specific ethnic designations and other classifications which reasonably might allow identification of the person(s) whose privacy right is to be protected; except that

(2) In the event that the HRC determines that the release of information reasonably subject to a right of privacy claim is required in a way which may disclose the identity of person(s) involved; then prior to the release of that information the HRC shall obtain from the District Court a further order of authorization and protection.

The orders of the District Court shall provide that failure by the HRC or other persons or agencies to whom the information is released to comply with the above order(s) shall make the offending party subject to contempt proceedings.

We suggest to the legislature that it consider legislation similar to 42 U.S.C. §2000e8(e) which would protect the right of privacy by fines and penal sanctions.

We vacate the judgment of the District Court and remand to the District Court for such further proceedings, including the entry of a protective order, as are required under this opinion.

Justice

-18-

We concur:

_Frank J. Haswell_
Chief Justice

_John Conway Harrison_

_Gene B. Daly_

_Daniel J. Shea_

_Frank Morrison_

_John C. Sheehy_
Justices