DA 10-0615

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 293

THE BILLINGS GAZETTE, a division of
LEE ENTERPRISES,

        Plaintiff and Appellee,

   v.

THE CITY OF BILLINGS,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 10-1991
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        John K. Addy (argued), Deputy City Attorney, Billings, Montana

        For Appellee:

        Martha Sheehy (argued), Sheehy Law Firm, Billings, Montana

        For Amicus Curiae:

        William J. O'Connor, II, O'Connor & O'Connor, P.C., Billings, Montana
(for Deanna Anthony)

Argued:  September 14, 2011
Submitted:  September 22, 2011
Decided:  November 23, 2011

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      In 2010, the Billings Police Department instituted an administrative investigation of one of its employees who was suspected of wrongdoing. The Billings Gazette sought access to a document generated by the Department as a result of its investigation. Because the conduct of the employee could potentially result in criminal charges against her, the City of Billings declined to provide the requested document to the Gazette. The Gazette sued in the Thirteenth Judicial District Court for Yellowstone County seeking a declaratory judgment that the City must release the requested document. The District Court ruled in favor of the Gazette and ordered that the document be provided to the newspaper. The City appealed, and obtained an order staying judgment through the appeal. We affirm.

## ISSUE

¶2      A restatement of the issue on appeal is whether the District Court erred in granting the Billings Gazette's petition for declaratory judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      Deanna Anthony, in her capacity as a Police Department Senior Administrative Coordinator, was authorized to make purchases of supplies and equipment on a police department credit card issued by the City of Billings. In May 2010, allegations arose that Anthony had used the credit card for personal purchases. A Billings Police Department captain was assigned to conduct an internal investigation of the allegations. Additionally, the City asked the State Division of Criminal Investigation to conduct a criminal investigation. The Department captain's internal investigation included two detailed

2

interviews with Anthony as well as interviews with third parties. At both Anthony interviews, the captain advised Anthony that she did not have the right to remain silent but that nothing she said could be used against her in a criminal proceeding.

¶4 In late October 2010, upon completion of the investigation, the captain issued a "due process letter" to Anthony notifying her of a due process hearing scheduled for November 12, 2010, at which Anthony would be given the opportunity to respond to the allegations and the evidence obtained during the investigation. This "due process letter" was 16 pages long and contained the detailed evidence gathered during the investigation. It is this letter the Gazette is seeking. Anthony resigned on November 10, 2010; therefore, the November 12 due process hearing did not take place.

¶5 On November 12, citing the Article II, Section 9 "right to know" provision of the Montana Constitution, the Gazette requested the due process letter from the City of Billings. On November 24, the City declined to provide the letter on the grounds that a criminal investigation was underway and release of the information in the letter "would potentially jeopardize that case."

¶6 On December 1, 2010, the Gazette filed a Verified Petition for Declaratory Relief and Petition for a Writ of Mandamus. The newspaper argued that the due process letter was a public document pertaining to a public employee occupying a position of trust, and was subject to release under Article II, Sections 8 and 9 of the Montana Constitution, the Freedom of Information Act, and § 2-6-102, MCA.

¶7 On December 6, 2010, the City moved for summary judgment, attaching a copy of the due process letter to its motion for the court's in camera review. The City argued that

release of a public document is a discretionary act requiring the court to balance the right to know against the right to individual privacy. The City asserted that Anthony had a reasonable expectation of privacy because she was a clerical employee and not a "sworn officer or an elected official." The City pointed out that should the State file criminal charges, the Gazette would have full access to "all of the information that can be substantiated by the Department of Justice," but that immediate release of the document could make future prosecution of Anthony impossible. Lastly, the City argued that Anthony was an indispensable party to the action between the City and the Gazette.

¶8 On December 13, 2010, and in response to the City's motion for summary judgment, the Gazette moved for summary judgment, seeking the release of the documents through an order or a writ. On December 14, the court issued its Order and Decision granting the Gazette's petition for declaratory judgment and denying the City's motion for summary judgment. In addition, the court concluded that Anthony was not an indispensable party in the action between the City and the Gazette because her presence in the action was not needed to afford complete relief to the existing parties. Noting that the City had done "a commendable job of protecting Anthony's interests," the court nonetheless provided Anthony three days within which to request intervention in the proceedings to protect her interests. Anthony duly sought intervention by motion on December 16, 2010, but her motion was never entertained by the District Court because it

4

was filed after the City of Billings filed its notice of appeal from the court's order of summary judgment. This appeal follows.[1]

## STANDARD OF REVIEW

¶9 We review for correctness a district court's interpretation of law pertaining to a declaratory judgment ruling. *In re Estate of Marchwick*, 2010 MT 129, ¶ 8, 356 Mont. 385, 234 P.3d 879.

## DISCUSSION

¶10 *Did the District Court err in granting the Billings Gazette's petition for declaratory judgment?*

¶11 In its order granting the Gazette's petition for declaratory judgment, the District Court noted that both "the City and the Gazette agree the documents in question are public documents subject to the right to know" and that both parties "acknowledge the documents are subject to public disclosure unless the demands of individual privacy clearly outweigh the public's right to know."

¶12 In balancing Anthony's right to privacy with the public's right to know, the District Court considered the well-established two-prong test: (1) whether Anthony has a subjective or actual expectation of privacy; and (2) whether society is willing to recognize that expectation as reasonable. *Bozeman Daily Chronicle v. City of Bozeman Police Dept.*, 260 Mont. 218, 225, 859 P.2d 435, 439 (1993). The court, citing *Citizens to Recall Mayor v. Whitlock,* 255 Mont. 517, 844 P.2d 74 (1992), noted "[p]ublic

---

[1] Though Anthony did not have the opportunity to intervene in the District Court proceedings before a notice of appeal was filed, this Court granted Anthony leave to file an amicus brief and participate in the oral argument of this case.

employees who occupy positions of trust have no legitimate right of privacy to investigations of their conduct." Therefore, the court determined that whether Anthony had a reasonable expectation of privacy depended upon whether she occupied a "position of trust" with the City of Billings Police Department. The City argued that as an administrative employee Anthony was not in a position of trust, while the Gazette argued that a person holding a job that allows her to spend public monies is in a position of trust. The District Court agreed with the Gazette, observing that "it seems quite clear that a person who is entrusted with public monies would be considered a person in a position of trust." Therefore, the court concluded Anthony had no reasonable expectation of privacy in the investigative document.

¶13 The court next addressed the City's arguments that the ongoing criminal investigation may be compromised if the due process letter is released. The District Court concluded that because the due process letter could not be used in the criminal investigation there was no reason to delay the release of the letter. The court noted the Justice Department would be required to conduct the criminal investigation with extreme care, but concluded that the requisite caution did not alter the presumption that public records should be released unless the expectation of privacy outweighs the release of the information.

¶14 On appeal, the City maintains that the release of the due process letter would taint the ongoing criminal investigation against Anthony and jeopardize the State's ability to prosecute her if there is a finding of wrongdoing. The City also continues to assert that Anthony had a reasonable expectation of privacy and that she was not in a "position of

6

trust." The Gazette, on the other hand, urges us to affirm the District Court's determination that Anthony was a public employee holding a position of trust and therefore had no reasonable expectation of privacy in an investigation into her abuse of that trust. The Gazette also argues that the existence of a separate criminal investigation cannot infringe on the public's right to know the outcome of the City's administrative investigation. Anthony, as amicus on appeal, argues that the due process letter is part of her personnel file in which she is entitled to privacy protections.

¶15 It is well established in Montana that citizens have certain rights pertaining to examination and observation of the governmental actions of their public officials and employees. Article II, Section 9 of the Montana Constitution provides:

> No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

Additionally, in relevant part, § 2-6-102(1), MCA, provides: "Every citizen has a right to inspect and take a copy of any public writing of this state . . . ." This right extends not only to individuals but also to media entities. *Yellowstone Cty. v. Billings Gazette*, 2006 MT 218, ¶ 17, 333 Mont. 390, 143 P.3d 135.

¶16 The public's right to know, however, must be balanced with an individual's right to privacy. Article II, Section 10 of the Montana Constitution states:

> The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.

7

Since our 1972 Constitution was adopted, we have recognized that the only exception to the restriction against the invasion of individual privacy is a compelling state interest. *Montana Human Rights Div. v. Billings*, 199 Mont. 434, 444, 649 P.2d 1283, 1288 (1982). In *Montana Human Rights*, we adopted the above-referenced test to determine whether a person has a constitutionally protected privacy interest. We examined whether the person involved has a subjective or actual expectation of privacy, and whether society is willing to recognize that expectation as reasonable. *Montana Human Rights*, 199 Mont. at 442, 649 P.2d at 1287.

¶17 This test was applied in *Missoulian v. Board of Regents*, 207 Mont. 513, 675 P.2d 962 (1984), in which a reporter with the Missoula newspaper, the Missoulian, requested permission to be present during performance evaluations of six Montana university presidents. The Board of Regents denied the request citing the confidentiality of job performance evaluations and the right to privacy held by each school president. The Missoulian brought an action under the "right to know" provisions of the Montana Constitution and the Open Meeting Act. *Missoulian*, 207 Mont. at 520-21, 675 P.2d at 966. The district court balanced the competing rights and granted the Board's motion for summary judgment upholding the legality of the closed meetings.

¶18 Applying the first prong of *Montana Human Rights'* test, we determined on appeal that the university presidents had an actual expectation of privacy in the evaluation proceeding based upon the written evaluation policies guaranteeing confidentiality. *Missoulian*, 207 Mont. at 523, 675 P.2d at 968. We also determined that the university presidents' expectations of privacy in their employment records were reasonable. We

8

noted that employment records could conceivably contain personal family information, health records revealing possible drug or alcohol problems, military or prison records, and other matters of a sensitive and personal nature. *Missoulian*, 207 Mont. at 524, 675 P.2d at 968. The Missoulian argued that the records contained much information in which the presidents could have no privacy interest, and information that was already part of the public's knowledge. While we agreed, we nonetheless ruled that the personnel files also contained private information that the individuals involved "did not expect to be disclosed." *Missoulian*, 207 Mont. at 525, 675 P.2d at 969. As had the district court, we balanced the right to privacy with the public's right to know and favored privacy.

¶19 In *Great Falls Tribune Co. v. Cascade Cty. Sheriff*, 238 Mont. 103, 775 P.2d 1267 (1989), four law enforcement officers were engaged in a high-speed automobile chase. The suspect ultimately jumped from his car and continued his flight on foot. The sheriff's deputy ran his squad car up onto a sidewalk and struck the suspect. The suspect was transported to the jail, rather than to a medical facility for treatment of his injuries. The jailer reported the matter and an investigation of the involved officers ensued. The sheriff's deputy was suspended, one police officer was fired, and two other officers were given the option to resign or be fired. They resigned. *Great Falls Tribune*, 238 Mont. at 104, 775 P.2d at 1267.

¶20 The Great Falls Tribune requested the names of the disciplined officers but the County Sheriff, the Great Falls Police Chief, and the Great Falls City Manager all denied the request. The Tribune filed a petition in district court seeking the identity of the officers. The district court balanced the two constitutional rights and concluded the

9

officers occupied "positions of great public trust," and as such, had no reasonable expectation of privacy. The court ordered their identities provided to the newspaper. We affirmed, expressly acknowledging the district court's observation that "it is not good public policy to recognize an expectation of privacy in protecting the identity of a law enforcement officer whose conduct is sufficiently reprehensible to merit discipline." *Great Falls Tribune*, 238 Mont. at 107, 775 P.2d at 1269.

¶21 More recently, we applied this two-prong test in *Yellowstone Cty. v. Billings Gazette*. In that case, the Billings Gazette sought access to public documents held by Yellowstone County concerning civil litigation brought against the County and County officials. *Yellowstone Cty.*, ¶ 1. Specifically, the Gazette wanted access to deposition testimony given by the Interim Chief Public Defender in one of the multiple lawsuits against the County. The district court allowed the Gazette access to the desired document after certain redactions were made. The Gazette appealed asserting a right to the entirety of the deposition transcript. We agreed that the document was a public document subject to public release. Relying on *Great Falls Tribune*, we concluded that the deponent, who was acting as the Interim Chief Public Defender, was in a "position of public trust," and that "society is not willing to recognize as reasonable the privacy interest of individuals who hold positions of public trust when the information sought bears on that individual's ability to perform public duties." *Yellowstone Cty.*, ¶¶ 21-23.

¶22 Applying the rationale of these cases to the facts before us, we note the parties do not dispute that the document is a public document created and held by a public body. Therefore, the due process letter is subject to release under the right to know provision.

10

However, whether it should be released requires another analytical step—a balancing test based on the facts of the case to determine whether the public's right to know is greater than the individual's right to privacy. *Yellowstone Cty.*, ¶ 20. In this case, the District Court performed such a balancing test, concluding that Anthony's job—a job that allowed her to spend large amounts of public monies—was a "position of trust." As such, and in reliance upon applicable case law, the court determined she did not have a reasonable privacy expectation in the results of an internal formal investigation into wrongdoing associated with her alleged mishandling of those funds. Because she was being investigated for allegations that she misappropriated public funds, which is the very aspect of her job that renders it a "position of trust," the public documents generated as a result of the investigation should be subject to public disclosure.

¶23 Based on the facts of this case, we conclude the District Court properly performed the balancing test, and that its determination that the public's right to know exceeded any individual rights of privacy Anthony might have was not erroneous. We reject the argument that our decision in *Missoulian* compels a different result. At issue in that case were job performance evaluations which the court concluded constituted matters of individual privacy. *Missoulian*, 207 Mont. at 528, 675 P.2d at 970. We addressed the benefits and detriments of open evaluation sessions and concluded that—in context—public disclosure of the evaluation process was, for many reasons, substantially disadvantageous to that process. *Missoulian*, 207 Mont. at 532, 675 P.2d at 972. Notably, we specifically considered the Missoulian's argument that public disclosure would further the public interest by "fostering public confidence in public institutions,

11

maintaining the accountability of public officials, [and] assuring public access to information to allow evaluation of public expenditures." We rejected this argument, stating that the newspaper "ha[d] failed to show how any of these public interests would be furthered by public disclosure . . . ." *Missoulian*, 207 Mont. at 532, 675 P.2d at 972.

¶24 Here, by contrast, the court was tasked with a review of an investigation into substantial allegations of wrongdoing by a public employee entrusted with public funds. This was not an innocuous performance evaluation. The court concluded that as a public employee in a position of trust, Anthony had no reasonable expectation of privacy in an investigation into her abuse of that trust. It bears noting that the very public interests raised by the newspaper in *Missoulian* and cited above were absent there, but are present here. As we said in *Missoulian*, the balancing test must be conducted "in the context of the facts of each case." *Missoulian*, 207 Mont. at 529, 675 P.2d at 971. The District Court correctly performed the balancing test here based on the particular facts before it. It did not err in doing so. *See also Bozeman Daily Chronicle v. City of Bozeman Police Dep't.*, 260 Mont. 218, 227, 859 P.2d 435, 440-41 (1993) (investigative documents associated with allegations of inappropriate sexual conduct of an off-duty police officer were proper matters for public scrutiny because "such alleged misconduct went directly to the police officer's breach of his position of public trust . . . ."); *Svaldi v. Anaconda-Deer Lodge Cty.*, 2005 MT 17, ¶ 31, 325 Mont. 365, 109 P.3d 548 (a public school teacher entrusted with the care and instruction of children held a position of trust and therefore the public had a right to view records from an investigation into the teacher's abuse of students).

12

¶25 We disagree with the Dissent's characterization of this case as similar to *Montana Human Rights* and its argument that our holding here undermines our decision in that case. The sole issue in *Montana Human Rights* was whether an employer may be required to produce the employment applications and personnel files of persons who had no connection to the discrimination claims there at issue. *Montana Human Rights*, 199 Mont. at 436, 649 P.2d at 1284. Here, by contrast, Anthony is a public employee alleged to have stolen thousands of dollars from the City of Billings. It bears noting that the Gazette is not seeking her personnel file; it is seeking only the due process letter which all parties agree constitutes a public document. Neither Anthony's status nor her reasonable expectations are logically akin to those of the innocuous job applicants in *Montana Human Rights* or the university presidents undergoing a routine performance evaluation in *Missoulian.* We do not seek to undermine our holdings in either case. Rather, we distinguish the cases on the basis of their disparate facts.

¶26 Second, even presuming for the sake of argument that Anthony had an expectation of privacy in the due process report, there remains a second inquiry: Would society be willing to recognize that expectation as reasonable? *Bozeman Daily Chronicle*, 260 Mont. at 225, 859 P.2d at 439. This prong of the balancing test was not analyzed by the District Court because it found that Anthony had no reasonable expectation of privacy. Having concluded that Anthony has an expectation of privacy in the due process report, the Dissent fails to complete the analysis required under our well-established test. Perhaps this is because—as we said in *Yellowstone Cty.*—"society is not willing to recognize as reasonable the privacy interest of individuals who hold positions of public

13

trust when the information sought bears on that individual's ability to perform public duties." *Yellowstone Cty.,* ¶ 21.

¶27 We agree with the observation of the Special Concurrence that each case must be evaluated separately, on the basis of the circumstances and facts presented. We do not say that every public employee with purchasing power can have no expectation of privacy in her personnel matters; rather, we conclude that given the circumstances here— the alleged embezzlement of large sums of money over a protracted period of time—the District Court correctly conducted the requisite balancing test and reached a conclusion we will not disturb.

¶28 We next address the City's claim that the due process letter should not be released because a criminal investigation of Anthony's alleged misconduct is underway. The City asserts that release of the letter to the Gazette and the Gazette's presumed subsequent publication of the letter would taint any future criminal prosecution. The Gazette counters that the due process letter does not constitute "confidential criminal justice information," and therefore it does not require limited dissemination under § 44-5-303, MCA. The City has failed to provide persuasive authority for prohibiting the release of the due process letter based upon a potential criminal prosecution. As noted by the District Court, the State may not use the due process letter in any criminal proceeding it may choose to bring against Anthony. The mere prospect of a criminal case will not deprive the public of its right to access a public document once that right has been balanced against the right to privacy.

¶29 Lastly, we are not persuaded by Amicus Anthony's argument that the due process letter is not a public document but rather a simple performance evaluation and a component of her personnel file for which she has an expectation of privacy. Unlike the routine job performance evaluations of the university presidents in *Missoulian*, the due process letter in this case was the product of an internal public employer investigation of allegations of wrongdoing by a public employee holding a position of public trust.

## CONCLUSION

¶30 For the foregoing reasons, we conclude the District Court did not err in its interpretation of applicable law and its decision to grant the Gazette's petition for declaratory judgment. We therefore remand this matter to the District Court with instructions to lift the stay ordered on December 21 and allow the release of the due process letter after the identities of third party interviewees are redacted.

/S/ PATRICIA COTTER

We concur:

/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT

Chief Justice Mike McGrath, specially concurring.

¶31 While I concur with the majority decision to affirm, I do so for different reasons.

¶32 As the dissent points out, the internal investigation conducted by the Billings Police Department involved interviews with Anthony conducted pursuant to what is

15

commonly referred to as the Garrity Rule, based upon *Garrity v. New Jersey*, 385 U.S. 493, 87 S. Ct. 616 (1967).  As such, Anthony was compelled to respond (subject to termination of her employment) to the questions asked in the internal investigation, but her responses could not be used in a subsequent criminal proceeding.

¶33    Given the *Garrity* warnings provided to Anthony, it is logical to conclude that she could have had an actual expectation of privacy in the interview proceedings and related correspondence from her employer.[1]

¶34    Under the test adopted in *Montana Human Rights Div.* and followed by the majority, the determination of whether the employee had an actual subjective expectation of privacy must be a factual determination made by the district court.  That factual determination should not be short-circuited as a matter of law based upon the nature of the employment, and in my view our previous cases should not necessarily be construed to support such a result.  *See Great Falls Tribune Co. v. Cascade County Sheriff*, 238 Mont. 103, 775 P.2d 1267 (1989) (ordering the release of names of police officers who were terminated or disciplined for conduct while on duty); *Yellowstone County v. Billings Gazette*, 2006 MT 218, 333 Mont. 390, 143 P.3d 135 (granting access to county documents prepared in civil litigation concerning county officers).

¶35    Similarly, a court should not answer the second inquiry—whether the subjective expectation of privacy will be recognized and upheld by society--based solely upon the

---

[1] The District Court determined that Anthony was not an indispensable party and Anthony had not moved to intervene prior to the notice of appeal.  Consequently, we do not have a record of Anthony's actual expectations, but her attorney clearly represented to this Court that she opposed release of the letter.

nature of the employee's duties. Courts should not conclude that merely holding a government position that involves the expenditure of public funds automatically places that person in a "position of public trust," trumping the potential expectation of privacy that employee has in the subject matter of a personnel investigation conducted by her employer. Many public employees, for example, have access to government credit cards and are required to use them for travel or other essential expenditures related to their employment. Certainly these employees could have actual expectations of privacy in interviews conducted as a part of a personnel investigation. And after review, a court may determine that society would consider those expectations to be reasonable. This Court should not endorse an analysis that is mechanical and rigid and thereby undermine the necessity to balance each case individually.

¶36 And, even as to employees who do not hold "positions of public trust," there may be facts and circumstances where the district court, after applying the appropriate balancing factors, finds that the privacy expectations are not reasonable and that the public right to know has attained the upper hand. The point is, as we have held repeatedly, each case must be evaluated considering its own unique circumstances.

¶37 Nevertheless, I agree that the second prong of the test—whether society would be willing to recognize certain subjective expectations as reasonable—does support the conclusion reached by the District Court. Even in circumstances where the trier of fact does determine a subjective privacy expectation exists, it still must be an expectation that society finds to be reasonable. *Bozeman Daily Chronicle v. City of Bozeman Police Dept.*, 260 Mont. 218, 225, 859 P.2d 435, 439 (1993).

17

¶38    Here, however, the majority (¶ 21), citing *Yellowstone County*, infers that we have adopted a standard where "society is not willing to recognize as reasonable the privacy interest of individuals who hold positions of public trust when the information sought bears on that individual's ability to perform public duties." *Yellowstone County*, ¶¶ 21-23. Again, such a conclusion is too broad. Standing alone, such a measure would indeed have caused the court to reach a different result in the *Missoulian* case.

¶39    The District Court conducted the appropriate balancing test. The court held Anthony did not have a reasonable privacy expectation in the due process letter framing the results of an internal investigation into wrongdoing associated with her alleged embezzlement of public funds. Applying the appropriate standard of review, I cannot say considering the facts of this case, that the District Court's conclusion was incorrect.

/S/ MIKE McGRATH

Justice Brian Morris dissents.

¶40    The Court determines that Anthony had no reasonable expectation of privacy in an investigation into her alleged abuse of the public trust. I fully agree. I disagree, however, that Anthony's lack of any reasonable expectation of privacy extends to the due process letter. The Court bases its ruling on the fact that Anthony occupied a position of public trust. All public employees in Montana, from the Governor, to university presidents, to town clerks, however, serve in positions of public trust. This formulation adds nothing to

18

the balancing of public rights and private interests inherent in Art. II, Sections 9 and 10 of Montana's Constitution when applied to disclosure of personnel related documents. The character of the documents at issue should control the outcome of the balancing test rather than the position of the character whom the report documents in these circumstances.

¶41 Delegates to the Montana Constitutional Convention recognized that a deliberation regarding personnel matters for public employees "would ordinarily be classified and would not be public" as the Bill of Rights Committee considered such matters to be "private." Mont. Const. Conv., Vol. V at 1670-71. The City prepared the due process letter based on two interviews with Anthony conducted by Captain Joel Slade (Slade). Slade preceded each interview with a warning to Anthony that her failure to cooperate in the investigation could result in her immediate termination. *Garrity v. N.J.*, 385 U.S. 493, 87 S. Ct. 616 (1967). This *Garrity* warning arose from the need for employers, whether public or private, to investigate quickly a problem situation in the workplace. This investigation forces employees to account for their conduct at the risk of immediate dismissals from their jobs.

¶42 Public employers previously faced a roadblock. To compel an employee to disclose information regarding alleged improper conduct could cause the employee to incriminate himself. The United States Supreme Court sought to resolve this predicament in *Garrity*. The Court's resolution allows a public employer to threaten an employee with immediate termination for remaining silent during an internal investigation. To offset this coercion, however, the Court prohibits these statements from

being used in any subsequent criminal prosecution of the employee. *Garrity*, 385 U.S. at 500; *Gardner v. Broderick*, 392 U.S. 273, 276, 88 S. Ct. 1913, 1915 (1968).

¶43  An employer, such as the City in this case, who threatens termination for an employee's silence must inform the employee that the statements would be inadmissible in any criminal proceedings. *Oddsen v. Board of Fire & Police Commrs.*, 321 N.W.2d 161, 172 (Wis. 1982). This *Garrity* warning—which Slade issued to Anthony—fosters the employer's need for quick action without compromising the employee's right against self-incrimination. *See Jones v. Franklin Co. Sheriff*, 555 N.E.2d 940, 944-45 (Ohio 1990).

¶44  The employer likely would become more fully informed about the nature and scope of any wrongdoing when it can force the employee to cooperate. The employer could use this information to determine what, if any, appropriate disciplinary actions should be taken. The employee faces a dilemma when presented with a *Garrity* warning: speak candidly with the employer or face immediate disciplinary action. Under the principles announced in *Garrity* and *Gardner*, a public employee knows that her failure to divulge information pertinent to the issue of her use or abuse of the public trust may result in the loss of her job. Those cases facilitate a public employer's ability to remove immediately an employee from a position of public trust if she refuses to cooperate with the employer's investigation into her conduct. They do not eliminate, however, the employee's reasonable expectation of privacy in a document that advises her of the employer's intended employment action.

¶45  The Court's decision ignores entirely the fact that the City provided Anthony with

a *Garrity* warning at the outset of the interview from which the City compiled the due process letter. The Court's decision further fails to account for the fact that the due process letter comprised the core category of personnel information for which our previous decisions have accorded protection. The letter provides notice from the employer to the employee of the disciplinary process and the information that may be used by the employer in any decision to impose discipline. The Court previously recognized in *Montana Human Rights* and *Missoulian* that sound public policy dictates that public employees possess a reasonable privacy interest in their employer-employee communication regarding personnel matters.

¶46 This Court affirmed in *Missoulian* that society would recognize a reasonable expectation of privacy in employer-employee communication. *Missoulian,* 207 Mont. at 528, 675 P.2d at 970. The Court emphasized that confidentiality would foster more candid communication between the presidents—the employees—and the Board of Regents—the employer. *Missoulian,* 207 Mont. at 526, 675 P.2d at 969. The Court deemed this expectation reasonable when privacy fostered candid communication between the employer and employee. *Missoulian,* 207 Mont. at 528, 675 P.2d at 970. The Court attempts to distinguish *Missoulian* on the grounds that it involved job performance evaluations as opposed to the alleged wrongdoing in the workplace by Anthony. Both job performance evaluations and investigations of alleged wrongdoing in the workplace, however, comprise subparts of the larger category of personnel matters.

¶47 The Court's reasoning in *Montana Human Rights* provides further guidance on the scope of a public employee's privacy rights. The Human Rights Division investigated

allegations of employment discrimination by the City of Billings—a form of wrongful conduct. *Mont. Human Rights,* 199 Mont. at 436, 649 P.2d at 1284. The Human Rights Division sought to compel the release of personnel records, including disciplinary items. The City agreed to release the records of the employees who had alleged discrimination. *Mont. Human Rights,* 199 Mont. at 436, 649 P.2d at 1285.

¶48 This Court agreed that public employees possess a privacy right in their personnel files. *Mont. Human Rights,* 199 Mont. at 443, 649 P.2d at 1288. The Court noted that personnel files can include sensitive information including drug and alcohol use, prison records, poor work performance and tardiness—again all forms of wrongful conduct. *Mont. Human Rights,* 199 Mont. at 442, 649 P.2d at 1288. A discussion regarding an employee's alleged wrongful conduct constituted precisely the type of communication that frequently occurred between the employer and the employee. *Mont. Human Rights,* 199 Mont. at 442, 649 P.2d at 1288.

¶49 The Court cited the frequent pressure upon an employee to "communicate these matters to his employer in the privacy of his boss's office…." *Mont. Human Rights,* 199 Mont. at 442, 649 P.2d at 1288. The public employees had received no specific assurances that the information would remain private. The Court nevertheless concluded that "employees would reasonably expect such communication normally would be kept confidential." *Mont. Human Rights,* 199 Mont. at 442, 649 P.2d at 1288.

¶50 Anthony faced significant pressure in the form of the *Garrity* warning to communicate to Slade her explanation for the alleged improper purchases. Anthony may not have received specific assurances that the information to be included in the due

22

process letter would remain private. Similar to the public employees in *Montana Human Rights*, however, she likely reasonably would have expected her communication would be kept confidential.

¶51 The Court dismisses the balancing at issue in *Montana Human Rights* as not analogous to Anthony's case. Opinion, ¶ 25. The Court contrasts Anthony, the focus of the investigation here, with the random job applicants in *Montana Human Rights*. The Court refused to release the personnel files of these random job applicants. *Mont. Human Rights*, 199 Mont. at 443, 649 P.2d at 1288. By contrast, the Court reasons that *Montana Human Rights* approved the release of the claimants' personnel files. Opinion, ¶ 25. The Court characterizes both Anthony and the claimants in *Montana Human Rights* as the focus of each investigation. The Court fails to acknowledge, however, that the claimants in *Montana Human Rights* voluntarily relinquished any privacy rights in their personnel files when they initiated discrimination claims. Their decision to file discrimination claims directly put their personnel files at issue. *See State ex rel. Mapes v. Dist. Court*, 250 Mont. 524, 529, 822 P.2d 91, 94 (1991). Anthony has asserted her privacy rights throughout this process.

¶52 Moreover, *Montana Human Rights* issued a protective order to govern the limited release of the personnel files. 199 Mont. at 449-50, 649 P.2d at 1291. The Court limited review of the claimants' personnel files to the Human Rights Commission itself. *Mont. Human Rights*, 199 Mont. at 449-50, 649 P.2d at 1291. The Court refused to allow the claimants' personnel files to be released to the public. *Mont. Human Rights*, 199 Mont. at 450, 649 P.2d at 1291. The Court further ordered the Human Rights Commission to

23

redact any personal information, including names and specific ethnic designations that reasonably might allow the person to be identified absent authorization from a district court. *Mont. Human Rights*, 199 Mont. at 450, 649 P.2d at 1291. Today's decision authorizes the release of Anthony's due process letter for public dissemination.

¶53 The Court further concludes that "society is not willing to recognize as reasonable the privacy interests of individuals who hold positions of public trusts when the information sought bears on that individual's ability to perform public duties." Opinion, ¶ 26, quoting *Yellowstone Co.*, ¶ 21. The Court ignores the fact, however, that *Missoulian* determined that university presidents—undoubtedly persons in positions of public trust—had a reasonable expectation in their job evaluations. 207 Mont. at 528, 675 P.2d at 970. The university presidents' job evaluations likely would relate directly to the presidents' ability to perform their public duties.

¶54 I condone in no way the alleged serious breach of the public trust. I cannot condone, however, the Court's decision to cast aside a public employer's strongest weapon to control wrongdoing in the workplace. The promotion of candid communication between an employer and an employee constitutes good public policy— as determined in *Missoulian* and *Montana Human Rights*—and serves as a proper foundation to recognize a reasonable expectation of privacy in Anthony's due process letter. The Court's refusal to recognize this privacy interest will encourage employees in future cases to remain silent during an internal investigation. This silence will hinder the effectiveness of a *Garrity* warning, and, more importantly, prevent an employer from taking quick action to ensure the integrity of public institutions. Innumerable

24

situations—from sexual harassment to allegations of embezzlement—may require a public employer to take swift action to control a workplace. Today's decision likely will limit a public employer's ability to take swift corrective action.

¶55 Finally, I disagree that the due process letter's release would further the public interest. The Gazette rightfully launched an investigation into alleged malfeasance within the Billings Police Department. The Gazette's investigation forced the City to disclose, or at least agree that it must disclose, much of the information relating to the City's internal investigation of the alleged malfeasance. The City confirmed to the Gazette that it had initiated an investigation. The City disclosed Anthony's name to the Gazette as the alleged wrongdoer. The City further stated the general nature of the allegations against Anthony.

¶56 The City even agreed at oral argument that the original receipts from the alleged inappropriate purchases would be subject to disclosure. The Gazette never has sought to obtain these original receipts. Anthony also noted that the Gazette could seek an inventory list from the Billings Police Department to compare with the original receipts to determine any improper purchases. The Gazette never has sought to obtain an inventory list. The Gazette instead sought to obtain the due process letter.

¶57 The due process letter recounts conversations between Slade and Anthony. The letter restates each question that Slade asked Anthony about specific expenditures. Anthony's respective explanation for the questionable expenditure follows each question. The letter repeats this pattern for the near entirety of its 16 pages. The letter reveals little information outside of Anthony's statements to Slade.

25

¶58 The public's right to know diminishes when the information sought could be obtained from other public sources. *Belth v. Bennett*, 227 Mont. 341, 349, 740 P.2d 638, 643 (1987). Nearly all the information concerning the allegations of Anthony's improper purchases—including the original receipts and inventory list—readily were available from sources other than the due process letter. The wrongful nature of some purchases would have been manifest from a review of the receipts alone. The receipts indicate that Anthony purchased 8 LCD TVs, a 42-inch plasma TV, a home theater system, two satellite radios and accessories, a Blu-Ray player, three DVD players, iPod accessories, and a Whirlpool French Door refrigerator.

¶59 The only item that was not available from other sources, and the only right to know that can be claimed in the due process letter, derived from Anthony's explanations for these purchases. Anthony's explanations in the due process letter provide no substantive information that better informs the public about mismanaged funds. Disclosure of the original receipts themselves, the inventory lists, and the City's oversight procedures—or obvious lack thereof—that allowed any malfeasance to occur better serves the public interest in rooting out mismanagement of public funds.

¶60 Not surprisingly, the Court finds implausible Anthony's explanations for the alleged improper purchases contained in the due process letter. The incredulity of Anthony's explanations does not warrant a decision to jettison the longstanding policy of promoting confidentiality of employer-employee communication regarding personnel matters. The Court's formulation injects the alleged wrongful nature of the conduct into the disclosure calculus.

26

¶61 We recognized in *State v. Goetz*, 2008 MT 296, ¶¶ 35-36, 345 Mont. 421, 191 P.3d 489, however, that the "underlying purpose or content of the conversation" should not affect a person's expectation of privacy in a conversation within their home or other private setting. Likewise, reasonableness of the privacy interest in a personnel document should not turn on whether the document accuses or exonerates the employee of wrongdoing. In the same manner that " 'police conduct may not be justified on the basis of the fruits obtained[,]' " *Goetz*, ¶ 36 (citation omitted), disclosure of employment documents may not be justified on the basis of allegations of wrongdoing. Opinion, ¶ 25.

¶62 I dissent.

/S/ BRIAN MORRIS

Justices Jim Rice and Beth Baker join in the foregoing dissent.

/S/ JIM RICE
/S/ BETH BAKER