No. 89-268

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

---

ROBERT FLESH,

             Plaintiff and Appellant,

    -vs-

THE BOARD OF TRUSTEES OF JOINT SCHOOL
DISTRICT #2, MINERAL AND MISSOULA COUNTIES
AND PAT DAVIES,

             Defendants and Respondents.

---

APPEAL FROM:  District Court of the Fourth Judicial District,
                In and for the County of Missoula,
                The Hon. James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Robert Flesh, Pro Se, Missoula, Montana

    For Respondent:

        Michael W. Sehestedt, Deputy County Attorney, Missoula,
        Montana

---

Submitted on Briefs:  Sept. 21, 1989

Decided: January 29, 1990

Filed:

_____
                    Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

The plaintiff, Robert Flesh brought this action alleging improper closure of various School Board meetings by the defendant School District. The District Court, Fourth Judicial District, Missoula County, entered summary judgment in favor of the School District for all meetings occurring more than 30 days prior to filing of the complaint and after a bench trial entered findings of fact, conclusions of law an order directing entry of judgment in favor of the defendant School District on closure of the School Board meeting of August 19, 1987.

Flesh raises a number of issues in his brief which we summarize as follows:

1. Whether the District Court properly granted summary judgment in favor of the School District for those meetings which occurred more than 30 days prior to the filing of the complaint.

2. Whether the District Court correctly held that the School Board properly closed the Board meeting of August 19, 1987.

3. Whether the School Board's denial of Flesh's request for an open meeting to discuss purely public questions was a form of prior restraint forbidden by the United States and Montana Constitutions.

As set out in his amended complaint, Flesh seeks relief for meetings the Board closed on November 18, 1986, December 8, 1986, July 6, 1987, August 10, 1987, and August 19, 1987. The relief sought for all meetings except the meeting of August 19, 1987, is a declaration that the meetings were improperly closed. As to the meeting of August 19, 1987, Flesh requests an order voiding any decision made during or

- 2 -

resulting from the closed portion of the meeting. The minutes of the School Board meetings indicate that Flesh attended only the meetings of August 10 and 19, 1987.

On August 19, 1987, the Board of Trustees of Joint School District No. 2, Mineral and Missoula Counties, held a meeting of the School Board. On the agenda for the meeting was a grievance filed by Flesh, alleging that Assistant School Administrator Carl Dehne had maliciously made false statements for the purpose of injuring Flesh's reputation in the community. The grievance requested a written and public apology and a severe reprimand for Dehne's "irresponsible, malicious and political misconduct." In addition, the grievance also requested an open hearing in front of the Board.

Flesh's grievance stemmed from an article written by Dehne in the Alberton School Newsletter, in which Dehne was critical of Flesh's accusation about Alberton School's use of the "Scholastic Scope" magazine in certain classes.

At the grievance hearing, on August 19, 1987, the presiding officer asked Dehne if he wanted to waive his right to privacy. Dehne refused to waive his right to individual privacy and the presiding officer determined that the right of Dehne's individual privacy outweighed the merits of public disclosure. Flesh requested to amend his grievance to delete all requests for disciplinary action at the time of the closure. The presiding officer denied Flesh's attempt to amend his grievance. Subsequently, the Board closed the meeting over the objections of Flesh. Flesh, Dehne, Dehne's attorney, and the superintendent remained in the closed meeting while Flesh presented his grievance.

After Flesh presented his grievance, the School Board closed the deliberations portion of the meeting. Flesh objected when the School Board excluded himself, Dehne, and

Dehne's attorney from the School Board's deliberation. The Board took no action as a result of the grievance.

The District Court, on December 22, 1988, granted summary judgment in favor of the School District finding the complaint untimely under § 2-3-213, MCA, for those meetings which occurred prior to August 15, 1987. Furthermore, the court found that Flesh lacked standing to bring an action regarding the School Board meetings prior to August 15, 1987, in that he had no personal interest in those meetings beyond the common interest of all citizens and taxpayers. Finally, the District Court contended that "since Mr. Flesh sought no relief for the meetings prior to August 15, 1987, there is no justiciable controversy and any ruling by this Court on those meetings would merely be advisory in nature."

Later, on January 20, 1989, after a bench trial, the District Court held in favor of the School District's closure of the meeting of August 19, 1987. The District Court found Dehne's right to privacy exceeded the public's right to know, and thus the School Board properly closed the meeting.

I.

Whether the District Court properly granted summary judgment in favor of the School District for those meetings which occurred more than 30 days prior to the filing of the complaint.

The District Court in its opinion accompanying its order granting summary judgment in favor of the School District found:

> Since these meetings occurred more than thirty days prior to the filing of this action, this action is untimely under Section 2-3-213, MCA. Further with exception of the meeting of August 10, 1987, it is clear that Plaintiff lacks standing to bring an action regarding the meetings prior to August 15, 1987, in that he has no personal interest in those meetings beyond the common interest of all citizens

- 4 -

and taxpayers. Chovanak v. Matthews, 120 Mont. 520, 188 P.2d 582 (1948). Finally since no relief is sought for the meetings prior to August 15, 1987, there is no justiciable controversy and any ruling by this Court on those meetings would merely be advisory in nature. Hardy v. Krutzfeldt, 206 Mont. 521, 672 P.2d 274 (1983). (Opinion and Order, December 22, 1980)

While the District Court properly granted summary judgment to the School District, the court incorrectly relied on § 2-3-213, MCA, to find in favor of the School District. Section 2-3-213, MCA, establishes the remedy for improperly closed meetings and provides:

Any decision made in violation of 2-3-203 may be declared void by a district court having jurisdiction. A suit to void any such decision must be commenced within 30 days of the decision.

In the present case, Flesh, however, did not seek to "void" these meetings, but instead sought a declaratory judgment and a writ of mandamus. Flesh asked the court to declare those meetings in violation of Article II, § 9 of the Montana Constitution and § 2-3-203, MCA. In addition, he requested that the District Court issue a writ of mandamus, ordering the defendant to conduct all meetings of the Board of Trustees in accordance with Article II, § 9 of the Montana Constitution and § 2-3-203, MCA. Therefore, the District Court incorrectly relied on § 2-3-313, MCA, because the plaintiff did not seek to "void" the meetings.

Even though § 2-3-213, MCA, does not apply to the meetings before August 15, this Court affirms the District Court's grant of summary judgment. The District Court was correct in holding that Flesh's claim must fail both for lack of justiciable controversy and for lack of standing.

In Hardy v. Krutzfeldt (1983), 206 Mont. 521, 524, 672 P.2d 274, 275, this Court stated:

> It is true that the purpose of the Uniform Declaratory Judgment Act is remedial, to 'settle and to afford relief from uncertainty and insecurity with respect to rights, status, and to the legal relations'; section 27-8-102, MCA. It is also true that the powers vested by the statute in the courts to render declaratory judgments include 'power to declare rights, status and other legal relations whether or not further relief is or could be claimed.' Section 27-8-201, MCA.
>
> Nevertheless, this Court has on occasion <u>refused to</u> <u>entertain a declaratory judgment action on the</u> <u>ground that no controversy is pending which the</u> <u>judgment would affect, and this Court attempts to</u> <u>avoid rendering advisory opinion.</u> [Emphasis added.]

In the present case, Flesh seeks no relief for the meetings prior to August 15, 1987. He is simply requesting an advisory opinion which will have no impact on the present and future rights and duties of the parties. There is no justiciable controversy, and therefore Flesh cannot maintain a declaratory judgment action based on meetings prior to August 15, 1987.

Flesh also argues that affirming the District Court's order would encourage flagrant violations of the open meeting laws. He contends that closed meetings discourage public participation, and reward closed-door, backroom dealing. This Court disapproves of clandestine meetings of public bodies which violate the spirit and the letter of the open meeting laws, which is not the case here. Board of Trustees, Huntley Project School District No. 24, Worden v. Board of County Commissioners of Yellowstone County (1980), 186 Mont. 148, 156, 606 P.2d 1069, 1073.

## II.

<u>Whether the District Court correctly found that the</u> <u>School Board properly closed the Board meeting of August 19,</u> <u>1987.</u>

Both the public right to know, from which the requirement that the meetings of public bodies be open to the public flows, and the right of privacy, which justifies the closure of a public meeting, are firmly established in the Montana Constitution. The Montana Constitution in Article II, § 9, defines the right of the public to know:

> Right to know. No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclose.

Furthermore, Article II, § 10 defines the right of privacy:

> Right of privacy. The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.

The constitutional provisions are implemented by the Open Meeting Laws. Section 2-3-203, MCA, provides in pertinent part:

> (1) All meetings of public or governmental bodies, boards, bureaus, commissions, agencies of the state, or any political subdivision of the state or organizations or agencies supported in whole or in part by public funds or expending public funds must be open to the public.

> (2) Provided, however, the presiding officer of any meeting may close the meeting during the time the discussion relates to a matter of individual privacy and then if and only if the presiding officer determines that the demands of individual privacy clearly exceed the merits of public disclosure. The right of individual privacy may be waived by the individual about whom the discussion pertains and, if that event, the meeting shall be open.

> . . .

Flesh contends that Dehne had no reasonable expectation of privacy in the subject matter presented at the grievance meeting, and thus, the District Court erred in holding that the School District properly closed the meeting. Flesh strongly urges this Court to enforce the public's right to know. In contrast, the School District argues the presiding officer, properly closed the meeting when Dehne refused to waive his right of privacy.

In The Missoulian v. Board of Regents of Higher Education (1984), 207 Mont. 513, 529, 675 P.2d 962, 971, this Court adopted a balancing test to resolve the competing and conflicting right-to-know and right-to-privacy provisions of the Montana Constitution:

> However, the right to know is not absolute. The more specific closure standard of the constitutional and statutory provisions requires this Court to balance the competing constitutional interests in the context of the facts of each case, to determine whether the demands of individual privacy clearly exceed the merits of public disclosure. Under this standard, the right to know may outweigh the right of individual privacy, depending on the facts.

In The Missoulian, the Board of Regents was required to balance the public's right to know against the individual's right of privacy with respect to employment evaluations. There the right of individual privacy was held to be paramount. Similarly, the presiding officer of the School Board of Trustees, in closing the grievance meeting to the public, balanced the interest of public's right to participate in the School Board meeting, and Dehne's right of privacy. The presiding officer determined the grievance meeting, due to Flesh's request for disciplinary action, might involve a review of Dehne's employment record. This Court has previously held employment records are subject to

the state Constitutional right to privacy. Montana Human Rights Division v. City of Billings (1982), 199 Mont. 434, 442, 649 P.2d 1283, 1287-1288.

Whenever the Court must determine whether a privacy interest is protected under the State Constitution, we apply a two-part test: (1) whether the person involved had a subjective or actual expectation of privacy; and, (2) whether society is willing to recognize that expectation as reasonable. Great Falls Tribune v. Judicial D. Court (Mont. 1989), 777 P.2d 345, 350; The Missoulian v. Board of Regents of Higher Education (1984), 207 Mont. 513, 522, 675 P.2d 962, 967; Montana Human Rights Division v. City of Billings (1982), 199 Mont. 434, 442, 649 P.2d 1283, 1287.

In this case the first part of the test-the subjective or actual expectation of privacy, is clearly met. Flesh's grievance specifically requested "Carl Dehne to be severely reprimanded by the Board for his irresponsible, malicious, and political misconduct." Dehne clearly had an expectation that when his employer, the School Board, considered the complaint against him it would do so in a closed session.

The second prong of the test is also met because society is willing to recognize a privacy interest in a public employer's consideration of allegations involving an employee's character, integrity, honesty, and personality. The Missoulian v. Board of Regents of Higher Education (1984), 207 Mont. 513, 675 P.2d 962; Sonstelie v. Board of Trustee (1983), 202 Mont. 414, 658 P.2d 413; Montana Human Rights Division v. City of Billings (1982), 199 Mont. 434, 649 P.2d 1283. This Court in Sonstelie, upheld the closure of a meeting when the meeting involved matters of a "personal nature":

> Appellant finally argues that the special meeting was illegally closed in violation of the Open

Meeting Act. This contention is without merit. The minutes of the meeting reflect that the trustees went into executive session 'to discuss and review teacher contracts for the 1981-82 school year.' When asked on direct examination why the Board went into executive session, chairman Pine replied that 'there was a lot of things that could come up of a personal nature and privacy of the matters could get really touchy and would really outweigh the public need to hear what was said.' The Open Meeting Act allows a presiding officer to close the meeting 'during the time the discussion relates to a matter of individual privacy' where the officer has determined that 'the demands of individual privacy clearly exceed the merits of public disclosure.' That right of individual privacy may be waived 'by the individual about whom the discussion pertains' and the meeting must then remain open. Section 2-3-203(2), MCA.

Sonstelie, 658 P.2d at 417.

Flesh argues society would not recognize a privacy interest in a public agency's published, and widely distributed newsletter article, or in questions pertaining to its truth or falsity. Furthermore, he contends the author, Dehne, could not have reasonably expected to acquire any special privacy rights by writing and publishing the article. Flesh is correct in his assertions that Dehne has no privacy interest in the newsletter. However, Flesh's grievance complaint not only called for a review of the newsletter, but also a request for disciplinary action against Dehne. This request for disciplinary action would necessitate a review of Dehne's personnel record. Clearly Dehne has the right to keep his employment file private and away from public scrutiny.

The public's right to know is not absolute but must be balanced against the competing right to individual privacy. In this case there is no showing of any public interest to be served by a public meeting but a substantial showing of a

legitimate employee privacy interest to be protected by closing the meeting.

Flesh contends the presiding officer failed to follow the proper procedure in closing the meeting to the public. We find little merit in plaintiff's contentions. Section 2-3-203(3), MCA, provides that the meeting may be closed when " . . . the presiding officer determines that the demands of individual privacy outweighs the merits of public disclosure." The minutes of the August 19, 1987 meeting reflect the presiding officer properly followed the statute:

> At the beginning of the personnel hearing the chairwoman asked Mr. Dehne if he waived his right to privacy. He did not waive it. Mr. Flesh objected to the hearing being held in executive session. The chairwoman after determining that in this personnel matter, the individual's right to privacy exceeded the public's right to know called for executive session. After the executive session, the chairwoman responded to Mr. Flesh's grievance items. No board action was taken.

Clearly the presiding officer properly followed the procedure set forth in § 2-3-203, MCA, and the meeting was properly closed to protect Dehne's individual privacy.

Finally, Flesh argues that the School Board improperly closed the deliberations portion of the meeting. Furthermore, Flesh contends the presiding officer failed to give any reason for the closing of the deliberations to the public. While the presiding officer failed to state the reason for the closure of the deliberation portion of the meeting, the record implicitly shows the deliberations, like the grievance portion of the meeting, was closed to protect Dehne's privacy interest.

III.

Whether the School Board's denial of the plaintiff's right to an open meeting to discuss purely public questions

- 11 -

<u>was a form of prior restraint forbidden by the United States</u> <u>and Montana Constitution.</u>

Flesh argues that the closure of the grievance hearing constituted a prior restraint on his First Amendment right of Free Speech. We find no merit in this argument. The Record reveals the School Board did not prevent Flesh from saying anything he wanted to say about Dehne or the School. Rather what the record reflects is that Flesh requested and obtained a hearing before the Board on his allegations that Dehne had acted maliciously and dishonestly and on his request that Dehne be reprimanded and a public apology made.

The First Amendment prohibition on prior restraint does not require the School Board to conduct an open hearing on allegations seeking disciplinary action against a school administrator. Flesh's own testimony reveals that this closure did not restrain him from speaking to the newspapers, television stations, or other segments of the public.

Affirmed.

_____
John C. Sheehy
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 12 -